T. L. White, F. Gannon, D. G. Donovan, James E. White, M. F. Ryan, E. L. McMullin and Henry McKay, Trustees of St. Peter's Roman Catholic Church of McKeesport, Appellants, *v.* William H. Smith, Collector of delinquent taxes for the City of McKeesport, and the City of McKeesport.

*Taxation—Charity—School—Act of May* 14, 1874.

The Act of May 14, 1874, P. L. 158, Constitution of Penna. art. 9, sec. 1, exempting certain property from taxation, does not require that the grant of property to a purely public charity shall be stamped by perpetuity. The only requirement is that when the institution seeks exemption its character, whether created by charter, conveyance, articles of association or voluntary rules and regulations, shall be that of a purely public charity. If it violates its implied duty towards its contributors, equity will afford relief; if it ceases to be that on which it depends for exemption, the property at once becomes subject to taxation.

There is nothing either express or implied in the law which disqualifies a board of trustees composed of members of a single church from managing and supervising a public charity.

A Roman Catholic church owned a lot on which was erected a church, a convent and a school building. The legal title was in the bishop in trust for the congregation. The school building was erected by voluntary contributions and maintained by such contributions. It was open to all, free of charge, without regard to creed, color, race or condition. No revenue was derived from it. The teachers of the school lived in the convent building which was occupied exclusively by them. They were paid a small salary in addition to the privilege of residence in the convent building. Both buildings when projected, designed and erected were intended for the use to which they were put. *Held,* that the convent building was exempt from taxation.

Donohugh's Appeal, 86 Pa. 306, followed. Philadelphia v. Women's Christian Association, 125 Pa. 572, Episcopal Academy v. Philadelphia, 150 Pa. 565, and Philadelphia v. Pennsylvania Hospital, 154 Pa. 9, criticised.

Argued Nov. 10, 1898. Appeal, No. 212, Oct. T., 1898, by plaintiffs, from decree of Superior Court, April T., 1898, No. 6, reversing decree of C. P. No. 1, Allegheny Co., Dec. T., 1893, No. 206, making perpetual a preliminary injunction. Before GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity to enjoin collection of taxes.

Appeal from the Superior Court.

The facts appear from the report in 8 Pa. Superior Ct. 206, and from the opinion of the Supreme Court.

*Error assigned* was the decree of the Superior Court.

*D. T. Watson,* with him *John Marron, F. C. McGirr* and *Johns McCleave,* for appellants.—The free public school which has been founded and maintained by the trustees of St. Peter's congregation, is a purely public charity, and exempt from taxation: Jackson v. Phillips, 14 Allen, 556; Fire Ins. Patrol v. Boyd, 120 Pa. 624; Episcopal Academy v. Philadelphia, 150 Pa. 565; Philadelphia v. Women's Christian Association, 125 Pa. 572; Philadelphia v. Pennsylvania Hospital, 154 Pa. 9; Burd Orphan Asylum v. School District of Upper Darby, 90 Pa. 21.

It is the purely public use of the property which secures the exemption from taxation, not the mode of dedication, or the title by which it is held, nor the character of the instrument, by which it is controlled. The legislature has not required the instrumentality by which the charity is to be furnished to the public to be incorporated nor has it designated any mode of dedication as a condition precedent to exemption: Gerke v. Purcell, 25 Ohio, 229; Humphries v. Little Sisters of the Poor, 29 Ohio, 201; Hennepin County v. Grace, 27 Minn. 503; Philadelphia v. Church of St. James, 134 Pa. 207; Mullen v. Commissioners of Erie County, 85 Pa. 291; Willard v. Pike, 59 Vt. 203.

The title to this land being in the bishop, in trust for the congregation of St. Peter's, the property is as fully devoted to a charitable use as if the congregation were incorporated, although no definite charitable use is expressed in the deed: Phipps v. Jones, 20 Pa. 260; Evangelical Association's App., 35 Pa. 320; Yard's App., 64 Pa. 95; Domestic and Foreign Missionary Society's App., 30 Pa. 425; Thomas v. Ellmaker, 1 Pars. 98.

The objection that the property may at any time be diverted from the public charitable use, for which it was contributed, and lawfully so, is not well considered. This property could not be appropriated to any other uses than those for which it has been donated, and it must be applied in furtherance of the charitable work of St. Peter's church: Story's Eq. Jur. secs. 1187–1191; Bethlehem Boro. v. Perseverance Fire Co., 81 Pa. 445; Henry v. Deitrich, 84 Pa. 292; Humane Fire Co.'s App., 88 Pa. 389.

The objection that the property in question is not permanently devoted to purposes of public charity is not tenable: Donohugh's App., 86 Pa. 306; Hennepin County v. Grace, 27 Minn. 506; Price v. Maxwell, 28 Pa. 23; Miller v. Porter, 53 Pa. 292; Mullen v. Juenet, 6 Pa. Superior Ct. 1; Miller's App., 10 W. N. C. 168.

If the property should cease to be devoted to the purely public charity for which it is now used, and become a source of revenue, it would then become taxable, but so long as it serves its present use it is exempt: Moore v. Taylor, 147 Pa. 481; Philadelphia v. Jewish Hospital Assn., 148 Pa. 454; American Sunday School Union v. Philadelphia, 161 Pa. 307.

*E. P. Douglass*, with him *T. C. Jones*, for appellees.—The only case that we know of that has been decided in this state where the taxing of a parochial school was the question involved is the case of Miller's App., 10 W. N. C. 168, in which this Court held that such school property was subject to taxation.

In the case of Mullen v. Juenet, 6 Pa. Superior Ct. 1, it was held that a parochial school property of a Roman Catholic church was taxable on the ground that the property could not be said to be regularly devoted to purely charitable purposes.

The decision is made on the principles laid down in Philadelphia v. Women's Christian Association, 125 Pa. 572, Thiel College v. County of Mercer, 101 Pa. 530, and Philadelphia v. Masonic Home, 160 Pa. 572.

The school property of the St. Peter's Roman Catholic church of McKeesport is not the property of a purely public charity; nor is the school a purely public charity as defined by our courts.

The convent property is not a part of the school; but is as separate and distinct from the school as a parsonage is from a church building or place of worship.

This convent and school property is the property of a church or congregation used for other than religious purposes, and being so used cannot, under the constitution and the act of assembly, be exempt from taxation.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:

St. Peter's Roman Catholic church of McKeesport owns ground fronting 280 feet on Market street and extending back 140 feet to an alley, all inclosed as one property. The legal title is in the bishop of the diocese in trust for the congregation. The church fronts sixty feet on the street, then, twenty-two feet distant, the convent fronts on the same street forty feet, then, twenty-two feet distant from that is the school building, having a frontage of 100 feet. The school building was erected in 1887, wholly by the voluntary contributions of the members of the congregation, and has since been maintained by such contributions; it is open to all, free of charge, without regard to creed, color, race or condition; at the commencement of this proceeding, there were in attendance about 750 children; no revenue whatever is derived from it. The teachers of the school live in the convent building, which is occupied exclusively by them and no others; they are paid for their services a small salary, in addition to the privilege of residence in the convent building; they are not lessees, and have no right or interest in it, except that of residence while teaching; both buildings, when projected, designed and erected, were intended for the use to which they have since been put. The city conceded that the church and school building were exempt from taxation under the act of 1874, but assessed and levied

a tax on the convent building; the collector, this defendant, was about to seize and sell the personal property on the premises in payment, when the trustees filed this bill for an injunction to restrain him. After full hearing of evidence in the court below, the facts were found as we have narrated them, and the collector was restrained; from this decree the city appealed to the Superior Court, where the decree was reversed and the injunction dissolved. The reasons given for the reversal by the Superior Court, are, that the title is in an individual, that it is under the control of one denomination, and there is no perpetual dedication of the property to public charity. Was the decree a correct legal conclusion from the facts found and not controverted in the court of common pleas? We concede that under our cases arising since the act of 1874, the exact line dividing taxable from nontaxable property is not at once discernible; we may even go further, and admit that taking all that was said instead of just what was decided in some of the cases, that line is not exactly a straight one; nor could it well be so, under the circumstances. Previous to the constitution and act of 1874, the legislature, by special act relieved from taxation just what property it saw fit, whether the property was charitable, religious, or even devoted solely to purposes of corporate or private gain. The legislative habit had grown into a great abuse; then came the new constitution, which at once put a stop to the abuse of power by the legislature. Whether in its sweeping provisions, it did not go somewhat further, and prevent good as well as evil, is a question with which we have nothing to do. Section 1, article 9, provides that: "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the general assembly may by general laws exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used for private or corporate profit, and institutions of purely public charity." As is said in Donohugh's Appeal, 86 Pa. 306, a case decided by our Brother MITCHELL, when sitting in the common pleas, within four years after the adoption of the constitution, that instrument exempted nothing from taxation; it only withheld from the legislature, power to exempt property of any

kind, except that mentioned in this section, and exemption of such property must be by general laws. It is evident by the use of the words "general laws" the constitution intended that exemptions should be as uniform on the same class of subjects as the uniformity enjoined in the preceding sentence of the same section, as to taxation. The legislature being powerless to particularize by bill, exemption for any one institution, necessarily, if it intended to exempt any property under this power, it must adopt such general designation or words of description as would include all of that class of property and thus promote uniformity. And palpably on this view the act of May 14, 1874, was framed as follows:

"All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed, and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity . . . . be and the same are hereby exempted from all and every county, city, borough, bounty, road, school and poor tax."

This at once imposed upon the courts a most difficult and often perplexing duty of interpretation from the facts in the cases as they arose. No hard and fast rule adapted to the varying facts of the different cases could at once be confidently laid down. The natural scientist depends for the soundness of his deductions on the copiousness of his facts; the value of a rule of law, often depends on the experience and observation of courts derived from many cases raising the same question but not involving the same facts. One thing was clear at the start, no matter what was the legislative language, the exemption could not extend to any property not a "purely public charity." This was not so clear to taxpayers, for it is seldom any one, whether individual or association, displays any great alacrity in rendering "unto Cæsar the things that are Cæsar's." Hence there were many attempts by parties clearly not within the act, to escape taxation, and by others where the question was doubtful; and while it was easy to say the institution making claim was not exempt unless purely a public charity, the varying facts presented by the different cases, resulted in apparently conflicting legal conclusions as to the application of the designation. The first case raising fairly the question, as to what was a

purely public charity, is Donohugh's Appeal, supra. In that case, the institution claiming exemption, was the Philadelphia Library Company, having a library of over 100,000 volumes; it was an ancient institution, and had been founded and endowed by voluntary gifts. The use of the books was absolutely free to all persons who chose to use them in the library building; but, as with all public libraries many persons desired to take books away and read them at their homes or lodgings; to such persons, a small fee was charged, and they were further required to make a deposit as security for the return of the book. Another class of readers who took the books away, were called "commuters." These were allowed to make a lump deposit annually as security for and hire of the books, the number so taken in one year being limited; the amount deposited however in the latter case, was less, than if each book used had been taken out singly and the charge then deposited. The entire sum thus realized was a comparatively small one, and was used in replacing wornout books and purchasing others. Not one of the twelve managers of the company received any compensation. The library, except from the small sum for book hire, was maintained and from year to year enlarged by voluntary contributions. The opinion on what constitutes a public charity, although the subject is more elaborately discussed, is compressed in these few words: "The essential feature of a public use, is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character. The smallest street in the smallest village is a public highway of the commonwealth, and none the less so, because the vast majority of the citizens will never derive any benefit from its use. It is enough that they may do so if they choose." Further, as to what constituted a "purely public charity" he says: "In this connection and in its ordinary sense, the word purely means, completely, entirely, unqualifiedly, and this meaning we must presume the people to have intended in adopting it in their constitution." Then as to the charge for a special use of the books taken away from the building, it is held to be but a regulation necessary to the proper management of such an institution, and does not destroy its character as a purely public charity; and further, if it had such effect, a regulation in violation of its fundamental character, would be void.

It will be noticed, that the small fee charged is held to be merely an administrative regulation, for the preservation of the library, and not a provision whereby, by hire to the public the library is to be maintained. And this seems to us to be clearly sustained by the facts. When the book is taken from the custody of the librarian and other employees, carried to another building, and probably used by others, it is subject to rougher usage than when in the library, and will become worn and useless sooner; the primary object is the preservation of the book to the public; incidentally the fee may net a profit; that will depend on the wear and tear of the book; but it is in no real sense a hiring to support the alleged charity, or a charge which excludes from the privileges of the library those unable to pay it, for they have free access to the books in the building. The conclusion was that the charity was a purely public one.

While it is not so said, yet is clearly implied from this opinion, that if any part of the public had been excluded from the use of the library because of inability or refusal to pay for books, or if its support had been derived from hiring of its books to the public, the conclusion would have been the opposite one to that adopted. In the many cases that have come before us in the more than twenty years since Donohugh's Appeal, our effort has been to adhere to it. We have noticed no case in which it has not been cited either by counsel or the court. In Miller's Appeal, 10 W. N. C. 168, the school was supported largely by tuition fees; it was held not exempt. In Thiel College v. County of Mercer, 101 Pa. 530, the college was incorporated to furnish an education to the youth of both sexes at as reasonable rates as possible; no profit was derived by the corporation, although the students paid for their board and tuition. It was held that as the school was maintained by those who attended it, and not by voluntary contributions, it was not exempt. In Hunter's Appeal, 22 W. N. C. 361, some income was derived by the academy from property which had been donated, but a considerable part of its revenues was from tuition fees at low rates. It was held not exempt. All these cases were based on the principles announced in Donohugh's Appeal. Three cases, Phila. v. Women's Christian Association, 125 Pa. 572, Episcopal Academy v. Phila., 150 Pa. 565, and Phila. v. Penna. Hospital, 154 Pa. 9, professedly follow Donohugh's Appeal, but

it is difficult to bring them on their facts within the rules of that case. The facts are much alike in the three, and really the last two merely follow the first; but it seems to me—and as to these cases I speak only for myself, and not for the Court,— on their facts they have but slight resemblance to Donohugh's Appeal. They can be sustained only by a very liberal construction of the act of 1874, and they go in the direction of exemption to the uttermost limit of such construction. In the Women's Christian Association case, the expressed object of the charter was the temporal, moral and religious welfare of women; by its organized methods, it furnished regular board for young women, restaurant meals, employment bureau, lectures and library; the cost of the building was $70,000 one half furnished by charitable contributions, the other half borrowed; the privileges of the institution were granted, only, to those who earned less than $6.00 per week in wages; these paid $3.50 per week for board and washing. Those out of employment and unable to pay, were taken in free, if there was any vacancy until the employment bureau secured places for them. In the year preceding the trial of the cause, out of 2,100 young women who enjoyed the privileges of the institution, but 100 did not pay. About one seventh of the gross expenses were charitable contributions, and six sevenths were paid by those who had meals, board or lodging. Not one of the officers or managers received any compensation. It was held to be a purely public charity, and exempt mainly on the ground that it was free from any taint of corporate or private gain. I doubt if the decision can be sustained on this ground alone; but the facts that board and lodging were furnished by the corporation at less than actual cost to a worthy class, and to some of them free, and that the deficiency was made up by voluntary contributions, would perhaps warrant the conclusion that the association was purely a charity. But it will be noticed, how narrow was the margin between gross expenses and gross receipts from boarders; if they had been equal or if the receipts from that source had exceeded the expenditures, it would have been difficult to discern the element of charity in the association, for there would have been no place for voluntary contributions; in that case it seems to me, it would have been purely a co-operative boarding and lodging house, managed by benevolent women, who gave their

services without charge. PAXSON, C. J., who delivered the opinion of the Court, says at the close of it: "It may be these views conflict slightly with what has been said in some of the cases referred to." (Meaning Thiel College, Miller's Appeal, Hunter's Appeal, and other cases which strictly followed Donohugh's Appeal.) "It does not conflict however with the points decided in either of them; while they are believed to be in entire harmony with Donohugh's Appeal." I think the distinction between a public charity supported almost wholly by voluntary contributions but which by a reasonable regulation necessary for the preservation and care of its property incidentally realizes a small income, and a charity which collects from its beneficiaries six sevenths of its whole income, is quite obvious. We have no desire to disturb the judgments in the three cases cited; they stand on the facts peculiar to them, and are outside the line of cases which follow Donohugh's Appeal. After this lapse of time and our observation of the litigation which has had its source in the act of 1874, and the constitution which suggested the act, we are averse to any departure from the law of that case; we therefore adhere to it now, as the settled rule of interpretation of that act. It is a safer guide than the Women's Christian Association case, which gives such prominence to the one fact, the absence of corporate or private gain. Carry that a little further, and it would exempt a carrying corporation from taxation, whose receipts are less than its expenditures; whose stockholders received no dividends, and yet the road is operated for the benefit of the whole public on exactly the same terms. We will not open the road further in that direction, because both the constitution and the statute obstruct it; and it is immaterial whether the courts break through or go around this obstruction, the end is the same; the very thing which the constitution sought to cure as a legislative abuse will become a judicial one.

These remarks are prompted by the fact, that appellants here have cited and relied on these cases, while we desire it to be understood, we rest our decision on Donohugh's Appeal and cases following it; under them, the law is clearly with appellants; this school is a purely public charity, and is embraced by the general words of the act. While it is not specifically designated by the word "school" yet it is clear from the juxta-

position of the words in the sentence and the character of the institution that it is included in "associations and institutions of learning." The preceding part of the sentence is an attempt to specify institutions of learning by the words, universities, colleges, seminaries, academies, then, as if mindful of the constitutional mandate, that exemption must be by general law, and therefore impliedly uniform, it uses the all embracing words "associations and institutions of learning." That a school for children preliminary to the academy or college is an institution of learning, in fact, no one can doubt. Its purpose and methods place it within the general term.

It is further argued that even if the school building proper be exempt, the teachers' residence is not, because it is not part of the school building. This argument assumes the fact to be in direct contradiction of that found by the court, that is, that it is used solely as a residence for the school teachers; that it is a part of the school property, and is necessary for the efficient operation and management of the schools; that it was constructed solely from voluntary contributions, and no revenue whatever is derived from it. Assuming as we must this finding of the court to be the fact, the property is exempt, for it is part of the school building, and exclusively used for school purposes.

It is argued further that the legal title to the property is in an individual, the bishop, with no declared trust in the grantee for a charitable use; that therefore the charity may be terminated at any time by a sale of the property. There is nothing in the act of assembly which requires that the grant of property to a purely public charity shall be stamped by perpetuity. The only requirement is that when the institution seeks exemption, its character whether created by charter, conveyance, articles of association, or voluntary rules and regulations, shall be that of a purely public charity. If it violates its implied duty towards its contributors, equity will afford relief; if it ceases to be that on which it depends for exemption the property at once becomes subject to taxation.

Nor in view of the other facts in the case is it important, that the trustees are all Catholics and therefore the institution is controlled and managed by Catholics. If there was evidence tending to show exclusion of noncatholic children, because

their belief did not accord with that of the trustees, the fact would have some weight, but standing as it does by itself, it is of but little consequence. There is nothing either express or implied, in the law, which disqualifies a board of trustees composed of members of a single church, from managing and supervising a purely public charity. A Presbyterian, Jewish, or other charity, may have boards of managers composed exclusively of persons of the faith indicated by the name, but if the benefits are open to all, without regard to creed, it does not affect the public character of the charity. Purely public charities are neither so abundant nor so effective, that we can afford to discriminate against them because of the creed of the managers. Our discrimination must rest solely on the fact as to whether they discriminate in favor of or against any part of the public.

We are of opinion the Superior Court erred in its decree reversing the court of common pleas, therefore the decree of the Superior Court is reversed, the decree of the common pleas affirmed, and the injunction reinstated, costs of appeal to be paid by appellees.