# Friends' Boarding Home of Bucks Quarterly Meeting, Appellant, *v.* County Commissioners of Bucks County.

*Charities—Public charities—Taxes—Exemption.*

A home for aged persons, the charter of which declares its object to be to provide "a home for aged and infirm Friends and Friendly people of limited means" is not a "purely public charity" which under the Constitution of Pennsylvania and the statutes can be relieved from taxation.

The fact that the charter provisions have been disregarded in the actual management of the home does not affect or alter the scope of its charities nor affect its liability for taxation.

Argued November 20, 1922. Appeal, No. 202, Oct. T., 1922, by plaintiff, from decree of C. P. Bucks Co., June T., 1921, No. 47, dismissing appeal from Board of County Commissioners in the case of Friends' Boarding Home of Bucks Quarterly Meeting v. County Commissioners of Bucks County, Pennsylvania. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Appeal from assessment of tax by the Board of County Commissioners of Bucks County. Before RYAN, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Alfred N. Keim* and *Harman Yerkes,* and with them *Carroll R. Williams,* for appellant.—The character of the appellant home entitles it to exemption: B'nai B'rith Orphanage v. Heidler, 46 C. C. 49; Penial Holiness Association's App., 48 C. C. 389; Burd Orphans' Asylum v. School District, 90 Pa. 21; Methodist Episcopal Church v. Phila., 266 Pa. 405; Bethlehem Diocese v. Boyer et al., 20 Dist. Rep. 995.

*Henry A. James,* for appellee, cited: Donohugh's App., 86 Pa. 306; Miller's App., 10 W. N. C. 168; Burd Orphan Asylum v. School District, 90 Pa. 25; Phila. v. Overseers, Public Schools, 170 Pa. 257.

OPINION BY GAWTHROP, J., March 2, 1923:

The sole question raised by the record is whether the appellant institution is a "purely public charity." Appellant is a corporation not for profit. Its charter declares its purpose to be as follows: "The purpose for which the corporation is formed, is to receive, maintain and conduct the building now being erected and to be donated by Edward M. Paxson, as a home or benevolent institution in which aged or infirmed Friends, or those in sympathy with Friends, can be comfortably provided for. Such persons who have limited means will be charged a sum less than the actual costs of their support." Article I of its constitution provides as follows: "The name of this Institution shall be Friends' Boarding Home of Bucks Quarterly Meeting. Its object is to provide a Home for aged and infirm Friends and Friendly people of limited means, where, at a reasonable cost, they can have all needful comforts." The corporation owns about two acres of land situated in the Borough of Newtown, upon which are erected a building

occupied as a home or boarding house, with an addition thereto known as "the infirmary," and a barn. The institution is maintained as a boarding home. Its maintenance is derived from board of persons who have been admitted to it, which ranges from $4.50 to $12.00 per week, a yearly income received under the provisions of the will of Anna Jeannes, deceased, and interest from an endowment fund created by voluntary contributions made to the institution. All of the income is appropriated to the upkeep of the property and there is no profit derived from the conduct of the institution. It is contended by appellant that its real estate is exempt from taxation because it is a "purely public charity."

The claim for exemption is based upon the Act of July 17, 1919, P. L. 1021, as amended by the Act of April 9, 1921, P. L. 119, which ordained that "all......institutions of......benevolence or charity......be and the same are hereby exempted from all......tax."

The Constitution of Pennsylvania, article IX, section 1, authorizes the general assembly to exempt from taxation by general laws "institutions of purely public charity." To sustain its claim to exemption from taxation, appellant must show that it is a "purely public charity."

That appellant is a charity in the legal sense of the word, there can be no question. Is it a "purely public charity"? To answer this, we must look at the facts. The giving a preference to members of Bucks Quarterly Meeting, who are admitted without the payment of an entrance fee, while others, who are not members of that meeting, are required to pay $100 in addition to board, does not constitute a discrimination against the general public which would be determinative of the fact that the institution is not a "purely public charity": Burd Orphan Asylum v. Upper Darby School District, 90 Pa. 21. In that case the privileges of the plaintiff institution were given by the instrument creating it to certain classes of children in preference to others, but ultimately

to the indefinite public. Nor does the mere fact that a public charity is under the control of those belonging to a particular religious denomination make it any the less a "purely public charity," so long as its ultimate object is to help an indefinite number of persons without regard to their religious tenets: White v. Smith, 189 Pa. 222. It would serve no useful purpose to review the numerous cases in the Supreme Court and in this court which discuss the question, what is and what is not a "purely public charity," as that was done by the present Chief Justice in the recent decision in Methodist E. Church v. Phila., 266 Pa. 405. The true rule to be applied in making the test in any such case was stated thus in Donohugh's App., 86 Pa. 306, a case usually cited when the question is involved and always with approval: "The essential features of a public use are, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character." Tried by this standard, the terms of appellant's charter and constitution convince us that this case is clearly distinguishable from Burd v. Upper Darby School District, supra, because of the express limitation to a sect to the exclusion of the indefinite public. Here there is more than the expression of a preference for the admission of a sect. There is a positive restriction to "Friends," "those in sympathy with Friends," and "Friendly people." A charity may restrict its admissions to a class of humanity and still be public; it may be for the blind, the mute......
the aged, for infants, for men, for women, for different callings or trades, by which humanity earns its bread and, as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public. But when the right of admission depends on the fact of voluntary association with some particular society, then a distinction is made which concerns not the public at large. The public is

interested in the relief of its members because they are men, women and children: Phila. v. Masonic Home, 160 Pa. 572. It is not interested because they are members of a particular religious sect or a particular organization. A home, without charge, exclusively for Presbyterians, Episcopalians or Friends would not be a public charity. This case is not distinguishable in principle from Phila. v. Masonic Home, supra, but comes within its ruling. Whether the restriction is to "Friends" or "those in sympathy with Friends," the result is the same. If any person is to be excluded from the benefits of a charity because he is not a member of or in sympathy with some one of the numerous religious, social or beneficial organizations of the Commonwealth, then, however pure may be the charity, it is not "purely public" and its property must be taxed because the people have said so by their fundamental law. We have not overlooked the fact that the testimony in the case shows that persons who are neither "Friends" nor "in sympathy with Friends" are not in fact excluded from its benefits, that out of a total of from twenty-four to twenty-eight boarders there are three who are not Friends, and that when applications for admission are received they are acted upon in the order in which they were received, irrespective of the denominational affiliation of the applicants. But the charter, which is the fundamental law of the corporation, and the constitution made under it, expressly restrict the privileges of the home to a religious sect or those in sympathy with the sect. Clearly, this is controlling and makes the institution a non purely public charity. It is no answer to say that the charity dispensed is of a purely public nature; that it is the practice of the management of the corporation to violate the terms of its charter and constitution and operate as a "purely public charity," by admitting persons who are not "Friends" or "in sympathy with Friends." Such conduct could be restrained as in violation of the charter. It is only in cases in which there is nothing in the

fundamental law of the institution which brands it as a non "purely public charity," that we may inquire whether the charity which is dispensed is of a purely public character, whether, in fact, the institution is operated as a "purely public charity." We agree with the learned judge below that appellant is a most commendable charity, but that it is not a "purely public charity" which under our Constitution and laws, can be relieved from taxation.

The assignments of error are overruled and the order appealed from is affirmed at the cost of appellant.