**POTTSTOWN SCHOOL DISTRICT and Pottstown Borough,**

v.

**HILL SCHOOL and Montgomery County Board of Assessment Appeals.**

**Appeal of Pottstown School District.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2001.

Decided Nov. 1, 2001.

313

Joseph E. Bresnan, Ambler, for appellant.

Thomas D. Rees, Norristown, for appellee, Hill School.

Joan M. Righter, Norristown, for appellee, Montgomery County Bd. of Assessment Appeals.

Gene E.K. Pratter, Philadelphia, for amici curiae.

Before DOYLE, President Judge, COLINS, Judge, SMITH, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Judge, and LEADBETTER, Judge.

LEADBETTER, Judge.

Pottstown School District appeals from the order of the Montgomery County Court of Common Pleas, which affirmed the tax-exempt status of the Hill School, an all-male private school providing college

preparatory courses. Specifically at issue is whether the Hill School's exclusion of women from its student body precludes it from claiming an exemption as a purely public charity.

The Hill School is located in the Pottstown School District in Montgomery County. Prior to September 1998,[1] the School limited its enrollment to young men only. In May 1996, the Pottstown School District (School District) and the Borough of Pottstown filed a petition before the Board of Assessment Appeals challenging the tax-exempt status of sixteen parcels of land owned by the School. Following a hearing, the Board issued a notice indicating that the tax exempt status of the parcels at issue would not be changed, and would continue for the tax year beginning January 1, 1997.

The School District appealed and the matter was submitted to the court of common pleas pursuant to a stipulation of facts. With respect to the time period at issue, namely, the period following the School District's petition in May 1996 up through the date when the Hill School began to admit women, the parties agreed that: (1) the School admitted young men of any race, color, national or ethnic origin regardless of financial ability to pay tuition; (2) the School did not discriminate among young men on the basis of educational or admission policies, nor on the basis of its scholarship, loan, athletic or other school-administered programs; and (3) the School did not admit young women regardless of qualifications. Finally, the parties agreed that the School met all the legal criteria necessary to qualify as a purely public charity except that of benefiting a substantial and indefinite class of persons. The School District argued before common pleas that the Hill School did not benefit a substantial and indefinite class of persons because its exclusion of women was discriminatory.

Common pleas initially sustained the appeal and held that the Hill School was liable for the taxes assessed on the parcels at issue. However, in response to a motion for reconsideration, common pleas vacated its earlier order and subsequently reached the opposite conclusion, holding that the Hill School was exempt from taxation as an institution of purely public charity. In reaching this conclusion, common pleas held that the fact that an institution benefits only a single gender does not preclude it from qualifying as an institution of purely public charity under the recent Institutions of Purely Public Charity Act (Charity Act)[2] or the decisional law prior thereto. The present appeal followed.

■ Article VIII, Section 2 of the Pennsylvania Constitution states:

(a) The General Assembly may by law exempt from taxation:

. . . .

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pa. Const., Art. VIII, § 2(a)(v). As our Supreme Court has noted, "The constitution does not, of itself, exempt any property; it merely permits the legislature to do so within certain limits." *Donohugh's Appeal*, 86 Pa. 306, 309 (1878). Accordingly,

---

1. In 1997, the Hill School Board of Trustees voted to admit women to the School, making the School's 1998 Fall class the first co-ed class in the School's history.

2. Act of November 26, 1997, P.L. 508, *as amended*, 10 P.S. §§ 371–385 (immediately effective).

any challenge to such tax exemptions implicates a two-part test: first, does the stated exemption fall within the range of authority granted by the Constitution and, second, has the General Assembly enacted legislation to exempt the property.

Until enactment of the Charity Act in November of 1997, the only statutory provision relevant to our analysis was found in Article II, Section 204 of the General County Assessment Law,[3] *as amended*, 72 P.S. § 5020–204(a)(3), which provides in pertinent part that, "[a]ll hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity ... with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity" shall be exempt from all county, city, borough, town, township, road, poor and school taxes. Since there is no question that the Hill School falls within the category of "academies, associations and institutions of learning," our only concern for the period before November, 1997 is whether the Hill School is an "[i]nstitution of purely public charity" within the meaning of our Constitution.

█ In *Hospital Utilization Project v. Commonwealth (HUP)*, 507 Pa. 1, 487 A.2d 1306 (1985), the Pennsylvania Supreme Court explained the constitutional criteria which an entity must meet in order to constitute a purely public charity for tax exemption purposes. It must: (1) advance a charitable purpose; (2) donate or render gratuitously a substantial portion of its services; (3) operate entirely free from a private profit motive; (4) benefit a substantial and indefinite class of persons who are legitimate subjects of charity; and (5) relieve the government of some of its burden. *Id.* at 21–22, 487 A.2d at 1317. *See also Unionville–Chadds Ford Sch. Dist. v. Chester County Bd. of Assessment Appeals*, 552 Pa. 212, 714 A.2d 397 (1998); *Mars Area Sch. Dist. v. United Presbyterian Women's Ass'n of N. Am.*, 554 Pa. 324, 721 A.2d 360 (1998). In the present case, the parties have stipulated that the Hill School satisfies all of the above criteria except for number four, viz., that the institution "benefit a substantial and indefinite class of persons who are legitimate subjects of charity."[4]

In reviewing this issue we do not write on a clean slate. In the seminal case of *Donohugh's Appeal*, the Pennsylvania Supreme Court addressed whether The Library Company of Philadelphia qualified as a public charity for purposes of tax exemption pursuant to the Act of May 14, 1874, P.L. 158.[5] There, the Court opined that:

The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this *indefinite* or unrestricted quality that gives it its public

---

3. Act of May 22, 1933, P.L. 853.

4. Our Supreme Court has previously held the Hill School satisfied other criteria to be a purely public charity. *In re Hill School*, 370 Pa. 21, 87 A.2d 259 (1952). However, the "substantial and indefinite class" issue was not involved in that appeal.

5. That Act provided that " 'all churches, meeting-houses, or other regular places of stated worship, with the grounds thereto annexed, necessary for the occupancy and enjoyment of the same; ... all hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed, and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity ...' are hereby exempted from all and every county, city, borough, road, and school tax...." *Donohugh's Appeal*, 86 Pa. 306, 308–09 (1878)(quoting the Act of May 14, 1874, P.L. 158).

character. The smallest street in the smallest village is a public highway of the Commonwealth, and none the less so because a vast majority of the citizens will certainly never derive any benefit from its use. It is enough that they may do so if they choose. So there is no charity conceivable which will not, in its practical operation, exclude a large part of mankind, and there are few which do not do so in express terms, or by the restrictive force of the description of the persons for whose benefit they are intended. Thus, Girard College excludes, by a single word, half the public, by requiring that only *male* children shall be received; the great Pennsylvania Hospital closes its gates to all but *recent* injuries, yet no one questions that they are public charities in the widest and most exacting sense.

86 Pa. at 313–14 (emphasis in original).

Subsequently, in *Burd Orphan Asylum v. School District of Upper Darby,* 90 Pa. 21 (1879), our Supreme Court addressed whether an orphanage populated primarily by white female orphan children baptized in the Protestant Episcopal Church constituted a "purely public charity." The charter of the orphanage established that the following classes of children be served by the institution: (1) white female orphan children of a certain age, baptized in the Protestant Episcopal Church in the City of Philadelphia; (2) the same class of children baptized in the same church in the state of Pennsylvania; and (3) all other white female orphan children without qualification, except that orphan children of clergymen of the said church shall have preference. After questioning, in dicta, whether a religious limitation would prevent a charity from being said to benefit an indefinite class of persons, the court held:

> [T]here is another and a broader ground upon which this particular charity must be sustained as purely public. It is this: the third class of persons enumerated in the will of the testatrix as the objects of her bounty are, "all other white female orphan children of legitimate birth, not less than four years of age, and of not more than eight years, without respect to any other ... qualification whatever ...."

*Id.* at 35–36. Based upon the above reasoning, the Court concluded that the orphanage constituted a purely public charity for purposes of tax exemption. *See also Trustees of Academy of Protestant Episcopal Church v. Taylor,* 150 Pa. 565, 25 A. 55 (1892) (denominational school's preference for children of parents connected to denomination does not preclude school from qualifying as purely public charity since no children are excluded by reason of denomination). Two years later, in *City of Philadelphia v. Masonic Home of Pennsylvania,* 160 Pa. 572, 28 A. 954 (1894), our Supreme Court had occasion to consider whether a home that benefited only aged, indigent Freemasons was a public charity. While there was no dispute that the home was a charity in the more general sense, the issue was whether the home's admission only of Masons precluded it from constituting a public charity. In concluding that the home did not qualify as a purely public charity for purposes of a tax exemption, the Court resolved the issue contrary to the suggestion in dicta in *Burd,* stating:

> The word "public" relates to or affects the whole people of a nation or state.... When the eligibility of those admitted [to the institution] is thus determined [such that only Masons are admitted], it seems to us the institution is withdrawn from public, and put in the class of private, charities. A charity may restrict its admissions to a class of humanity, and still be public. It may be for the blind, the mute, those suffering un-

der special diseases; for the aged, for infants, for women, for men, for different callings or trades by which humanity earns its bread; and, *as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public. But when the right to admission depends on the fact of voluntary association with some particular society, then a distinction is made which concerns not the public at large.* The public is interested in the relief of its members, because they are men, women, and children, not because they are Masons. A home without charge, exclusively for Presbyterians, Episcopalians, Catholics, or Methodists, would not be a public charity. But then to exclude every other idea of public, as distinguished from private, the word "purely" is prefixed by the constitution. This is to intensify the word "public," not "charity." It must be purely public; that is, *there must be no admixture of any qualification for admission, heterogeneous, and not solely relating to the public. . . .* There is no public burden for the relief of aged and indigent Masons. There is the public burden of caring for and relieving aged and indigent men, whether they be Masons or anti-Masons; but age and indigence concern the public no further than the fact of them; it makes no inquiry into the social relations of the subjects of them. . . . Is any member of humanity—that greater public of whom the commonwealth is constructively the parent or trustee—excluded because he has not a particular relation to some society, church, or oth-

er organization, which relation is dependent on his wholly voluntary act? If so, if he be excluded in fact, because he is not Presbyterian, Freemason, or a member of some one of the innumerable religious, social, or beneficial organizations of the commonwealth, then, however pure may be the charity, however commendable its purpose, it is not "purely public," and its property must, under the constitution, be taxed; not because this court says so, but because the people have said so in their fundamental law.

*Id.* at 578–79, 28 A. at 955 (emphasis added). *Accord Mercersburg College v. Poffenberger*, 36 Pa.Super. 100 (1907) (college's admission of only white male students does not preclude conclusion that school is purely public charity: "so long as the line is drawn by distinctions which involuntarily affect or may affect any of the whole people [e.g., youth, age, sex . . . ], it does not destroy the public character of the institution"); *Friends' Boarding Home v. County Comm'rs*, 80 Pa.Super. 475 (1922) (charter of nursing home, which restricts privileges of the home to specific religious sector or those in sympathy with the sect, precludes the home from being a purely public charity). *See also White v. Smith*, 189 Pa. 222, 42 A. 125 (1899); *In re Lawson's Estate*, 264 Pa. 77, 107 A. 376 (1919).

■ Thus, our courts have specifically found single gender institutions to "benefit a substantial and indefinite class of persons," and although public attitudes toward gender discrimination have changed since these decisions were announced, our research has not revealed any authority questioning these precedents.[6] More sig-

---

**6.** Moreover, although the role of women in society has changed dramatically since the time of these decisions, as is pointed out in articles cited by *amici curiae* Pennsylvania Association of Independent Schools, et al., the principle that single gender schools provide significant educational benefits for certain students has received substantial support. *See also Faulkner v. Jones*, 51 F.3d 440, 443 (4th Cir.1995).

nificantly, the general test uniformly employed—whether the discrimination is based upon a voluntary characteristic such as religious affiliation or an involuntary one—reflects that gender limitations would not preclude an institution from falling within the constitutional definition of a purely public charity. In other words, by arguing that the modern legal view of gender discrimination should alter the "substantial and indefinite class" analysis misses the mark. The "indefinite class" test measures whether the benefited class is based upon a voluntary or involuntary characteristic, not whether that classification is invidious or even illegal. Indeed, both the Burd Orphan Asylum and Girard College discriminated upon the basis of race at the time our Supreme Court found them to benefit a substantial and indefinite class, in spite of equal protection provisions in both the United States and Pennsylvania Constitutions.[7] Therefore, we conclude that the Hill School's exclusion of women does not preclude it from satisfying the constitutional requirement that it benefit a substantial and indefinite class of persons who are legitimate subjects of charity.

Even if this is so, the School District claims that application of the Charity Act precludes the exemption from the effective date of the Act until the time the school admitted women. That Act purports to provide "standards to be applied uniformly in all proceedings throughout this Commonwealth for determining eligibility for exemption from state and local taxation which are consistent with traditional legislative and judicial applications of the con-

stitutional term 'institutions of purely public charity.'" Section 2 of the Charity Act, *as amended,* 10 P.S. § 372(b). Notably, the Charity Act, which codifies the *HUP* criteria as well as adding several other objective standards, defines the phrase "substantial and indefinite class of persons" as:

> Persons not predetermined in number, provided that, where the goods or services are received primarily by members of the institution, membership cannot be predetermined in number and cannot be arbitrarily denied by a vote of the existing members. *This subsection specifically recognizes that the use of admissions criteria and enrollment limitations by educational institutions does not constitute predetermined membership or arbitrary restrictions on membership so as to violate this section and recognizes that an institution may reasonably deny membership based on the types of services it provides, as long as denial is not in violation of Federal or State anti-discrimination laws,* such as the Civil Rights Act of 1964 (Public Law 88–352, 78 Stat. 241) and the act of October 27, 1955 (P.L. 744, No. 222), known as the Pennsylvania Human Relations Act.

Section 5 of the Act, 10 P.S. § 375(e) (emphasis added).[8]

 It is upon this definition that the School District bases its second argument. Of course, to the extent Article VIII defines the categories of institutions which may be exempted from taxation, legislation cannot expand the scope of charitable ex-

---

7. For this reason, we find the passage of the Equal Rights Amendment to the Constitution of Pennsylvania, Pa. Const. Art. I, § 28, to have no bearing on this analysis. We emphasize that we are dealing here only with a claim that the *Hill School* is not a purely

public charity within the meaning of Art. VIII, § 2(v), not a claim under any civil rights law.

8. The School District does not argue that the italicized portion of the Charity Act violates the Equal Rights Amendment, Pa. Const. Art. I, § 28, so we do not consider this issue.

emption beyond that constitutional definition. Nor can the General Assembly alter the Constitution by purporting to define its terms in a manner inconsistent with judicial construction; interpretation of the Constitution is the province of the courts. Nonetheless, it would appear that since Article VIII does not mandate but only permits exemption, the General Assembly is free to enact more limited tax exemptions than the Constitution would allow. If so, the legislature can restrict the scope of institutions entitled to tax exemptions as "purely public charities," not because it may define the term but because it may refrain from exercising the full extent of its power. It may be argued, as does the concurring opinion of Judge Kelley, that the General Assembly may not effectuate such a limitation in the manner utilized in the Charity Act, *i.e.*, by saying that certain institutions are not purely public charities, but must instead directly amend the General County Assessment Law. We need not here decide this issue, however, both because it has been neither raised nor briefed by the parties [9] and because we conclude that application of the Charity Act does not command a different conclusion from that reached under our constitutional analysis above.[10]

Pursuant to the Charity Act, an educational institution's admissions criteria and enrollment limitations do not violate the substantial and indefinite class of persons criteria as long as the admission/enrollment criteria does not violate federal or state anti-discrimination laws. The Hill School argued before common pleas, which agreed, that its exclusion of women students does not violate any federal or state laws because the potentially applicable statutes contain an exception for private schools that do not receive government subsidies.[11] On appeal, while the School District concedes that a private school may limit its enrollment to one gender without violating state or federal law, it notes that while single gender public education was generally the result of historical factors not themselves invidiously discriminatory, the federal courts have since recognized that a state may not provide single gender education without adequate justification. Otherwise, the failure to provide a comparable benefit to the other gender constitutes a denial of equal protection. *See United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996); *Faulkner v. Jones*, 51 F.3d 440 (4th Cir. 1995). *See also Mississippi Univ. for*

9. See generally *Riedel v. Human Relations Comm'n*, 559 Pa. 34, 739 A.2d 121 (1999).

10. As our courts have repeatedly noted, we should not decide the constitutionality of a statute if we can avoid the question by statutory construction. *Department of Transp. v. McCafferty*, 563 Pa. 146, 153, 758 A.2d 1155, 1159 (2000), citing *Boettger v. Loverro*, 526 Pa. 510, 518, 587 A.2d 712, 715 (1991); *Gwynedd Dev. Group, Inc. v. Department of Labor and Industry, Bureau of Labor Standards*, 666 A.2d 365, 370 (Pa.Cmwlth.1995), *appeal granted on other grounds*, 544 Pa. 218, 675 A.2d 1220 (1996).

11. Specifically, common pleas examined 20 U.S.C. § 1681(a)(1) (exception to prohibition against discrimination on basis of sex in connection with education programs for schools not receiving federal funds); Section 5 of the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955 (school admission policies not mentioned in enumeration of unlawful discriminatory practices); and Section 9 of the Pennsylvania Fair Educational Opportunities Act, Act of July 17, 1961, P.L. 776, *as amended*, 24 P.S. § 5009(a) (private schools that draw their enrollment entirely from members of one gender excepted from prohibition against discrimination on the basis of gender). We note that the Fair Education Opportunities Act does not apply to secondary schools like the Hill School. *See* Section 3 of the Fair Educational Opportunities Act, 24 P.S. § 5003(1).

*Women v. Hogan,* 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982). Thus it maintains that since gender exclusion would amount to a denial of equal protection by a state school, it is, by definition, illegal in nature even though discrimination by private schools "is beyond the reach of government intervention." [12]

This argument is flawed in two respects. First, had the legislature intended to deny exemptions to all discriminatory institutions, it could have so provided. Instead, it specifically excluded only those institutions whose discrimination is in violation of state or federal law. We decline to infer that the General Assembly intended something other than what it said in plain English. In addition, the stated purpose of the Charity Act is to provide:

> standards to be applied uniformly in all proceedings throughout this Commonwealth for determining eligibility for exemption from State and local taxation *which are consistent with traditional legislative and judicial applications of the constitutional term "institutions of purely public charity."*

Section 2 of the Charity Act, 10 P.S. § 372(b)(emphasis added). Since we must assume that the legislature was aware of the longstanding precedents holding that single gender institutions fell within the definition of "purely public charity," we must therefore conclude that the Charity Act intended no change in this construction.

Accordingly, the order of common pleas is affirmed.

## ORDER

AND NOW, this 1st day of November, 2001, the order of the Court of Common Pleas of Montgomery County in the above captioned matter is AFFIRMED.

Concurring Opinion by Judge
FRIEDMAN.

I concur in the result reached by the majority. However, I write separately because I do not believe that the disposition of the issue in this case should rest on case law which, for the most part, is over one hundred years old and interprets the Pennsylvania Constitution of 1874, *not* the Pennsylvania Constitution that exists today.[1]

The issue presented here is whether the Hill School, an all-male private school, is an institution of purely public charity that is entitled to a government benefit, i.e., tax exemption, under Article VIII, Section 2 of the Pennsylvania Constitution. In its reliance on extremely old case law, the majority dismisses the fact that, on May 18,

---

**12.** The School District makes the following argument in its appellate brief:
> [T]he language in the [Charity] Act is measuring the conduct, the nature of the policy itself, without regard to the fact that the anti-discrimination laws contain exceptions for schools that are not government supported. In other words, the exemption allowed to such private schools when applying the anti-discrimination laws directly does not "carry over" to the Charity Act's proviso that a school is not a charity when it has a discriminatory admissions policy. The Hill School's admissions policy was discriminatory, and this is no less so because they were granted an exception by virtue of being private. The exception does not declare that the policy is not discriminatory, but only that such discrimination is beyond the reach of government intervention.

Brief for Appellant at 16.

**1.** I note that the language contained in Article VIII, Section 2 of the Constitution of 1968, which we must interpret in this case, was found in Article IX, Section 1 of the Constitution of 1874. *See In re Hill School,* 370 Pa. 21, 87 A.2d 259 (1952).

1971,[2] the voters of the Commonwealth of Pennsylvania adopted the Pennsylvania Equal Rights Amendment (ERA) at Article I, Section 28 of the Pennsylvania Constitution. (*See* majority op. at p. 318 n. 7.) According to our supreme court, we must read and construe provisions of the Pennsylvania Constitution together with its other provisions. *Commonwealth ex rel. Specter v. Vignola*, 446 Pa. 1, 285 A.2d 869 (1971). However, the majority analyzes Article VIII, Section 2 of the Pennsylvania Constitution without considering the ERA. Unlike the majority, I would not ignore the ERA in this case.[3]

## I. Equality of Rights Under the Law

The ERA provides: "Equality of rights *under the law* shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Pa. Const., Art. I, § 28 (emphasis added).

> The thrust of the [ERA] is to insure equality of rights *under the law* and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. *The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman.*

*Henderson v. Henderson*, 458 Pa. 97, 101, 327 A.2d 60, 62 (1974) (emphasis added). The federal constitutional concept of "state action" does not apply to the ERA. *Bar-*

*tholomew ex rel. Bartholomew v. Foster*, 115 Pa.Cmwlth. 430, 541 A.2d 393 (1988), *aff'd*, 522 Pa. 489, 563 A.2d 1390 (1989).

The 'state action' test is applied by the courts in determining whether, in a given case, a state's involvement in private activity is sufficient to justify the application of a federal constitutional prohibition of state action to that conduct. *The rationale underlying the 'state action' doctrine is irrelevant to the interpretation of the scope of the [ERA],* a state constitutional amendment adopted by the Commonwealth as part of its own organic law. *The language of that enactment [the ERA],* not a test used to measure the extent of federal constitutional protections, *is controlling.*

*Hartford Accident and Indemnity v. Insurance Commissioner*, 505 Pa. 571, 586, 482 A.2d 542, 549 (1984) (emphasis added). The text of the ERA makes clear that its prohibition "circumscribes the conduct of *state* and local *government* entities and officials of all levels in their *formulation*, interpretation and enforcement of *statutes*, regulations, ordinances and other legislation as well as decisional law." *Id.* (emphasis added).

## II. Tax Exemption by Law

Article VIII, Section 2(a)(v) of the Pennsylvania Constitution provides as follows:

(a) The General Assembly *may by law* exempt from taxation:

. . . .

(v) Institutions of purely public charity, but in the case of any real property

---

2. *See* Robert E. Woodside, Pennsylvania Constitutional Law 193 (1985).

3. I point out that, in 1952, our supreme court held that the Hill School was an institution of purely public charity entitled to tax exemption under Article IX, Section 1 of the Constitution of 1874 and section 204 of the Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204. *In re Hill School.* However, because

the ERA did not exist in 1952, the court never considered that constitutional provision in making its determination. The ERA has been a part of our constitution for thirty years now, and, in view of its relevance to the issue confronting us, I believe we are obliged to include it in any analysis of the Hill School's entitlement to tax exemption.

tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pa. Const., Art. VIII, § 2(a)(v) (emphasis added). Quite clearly, Article VIII, Section 2(a)(v) allows, but does not compel, the General Assembly to enact a law exempting institutions of purely public charity from taxation.[4] However, construing this provision together with the ERA, I believe it is clear that the General Assembly may not enact a tax exemption law that denies or abridges equality of rights based on sex. In other words, the General Assembly may not enact a law providing tax exemption for male-only institutions of purely public charity but *not* providing tax exemption for female-only institutions.[5]

### III. Charity Act

Pursuant to Article VIII, Section 2 of the Constitution of 1968, the General Assembly enacted the Purely Public Charity Act (Charity Act), Act of November 26, 1997, P.L. 508, *as amended,* 10 P.S. §§ 371–385. Section 5(e)(2) of the Charity Act states that an educational institution may reasonably deny admission to certain individuals [6] and qualify as an institution of purely public charity "as long as denial [of admission] is not in violation of Federal or State anti-discrimination laws. ...." 10 P.S. § 375(e)(2).

The first question for our purposes here is whether this law violates the ERA, i.e., whether, under this law, equality of rights is denied or abridged on the basis of sex. Because the law does not distinguish between male-only and female-only educational institutions, bestowing the government benefit of tax exemption upon both kinds of single-sex schools, the law, on its face, does not deny or abridge equality of rights on the basis of sex.[7]

Having determined that section 5(e)(2) of the Charity Act does not violate the

4. Thus, theoretically, the General Assembly is free to pick and choose among charitable institutions, granting tax exemption to some while withholding that benefit from others.

5. The majority states that it need not decide whether, under Article VIII, Section 2 of the Constitution of 1968, the General Assembly may exempt *some* institutions of purely public charity without exempting *all.* (Majority op. at p. 319.) Because this court must read and construe Article VIII, Section 2 together with the ERA, I believe that we cannot avoid this issue. Clearly, under the ERA, the General Assembly must withhold tax exemption from institutions of purely public charity that violate anti-discrimination laws relating to sex.

6. I note that, according to the majority, "the principle that single gender schools provide significant educational benefits for certain students has received substantial support." (Majority op. at p. 317 n. 6.) However, at least one commentator indicates that the results of empirical research on this issue are inconclusive at best and that, inevitably, courts rush to embrace studies that comport with their social visions. *See* Nancy Levit, Separating

Equals: Educational Research and the Long Term Consequences of Sex Segregation, 67 Geo. Wash. L.Rev. 451 (March 1999).

With respect to exclusively male schools, the majority of research shows that boys are served best, both academically and socially, in coeducational environments; the effects of single-sex education on boys are either neutral or negative. *Id.* As for all-female institutions, recent data suggests that variables other than sex explain performance differences among girls and, once appropriate controls are introduced for the other variables, measurable differences disappear. *Id.* Nevertheless, the U.S. Supreme Court has stated with regard to single-sex education that: "We do not question [a state's] prerogative *evenhandedly* to support diverse educational opportunities." *United States v. Virginia,* 518 U.S. 515, 534 n. 7, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (emphasis added).

7. If the only single-sex private schools in Pennsylvania were all-male institutions like the Hill School, then it would be necessary to decide whether, as applied, the law denies or abridges equality of rights on the basis of sex.

ERA, the final question is whether the Hill School's denial of admission to women violates federal or state anti-discrimination laws. As the majority indicates, federal and state anti-discrimination laws do not prohibit private single-sex secondary schools. Thus, the Hill School is entitled to tax exemption under Article VIII, Section 2 of the Pennsylvania Constitution as an institution of purely public charity.

Accordingly, I would affirm.

Judge SMITH joins in this Concurring Opinion.

Concurring Opinion by Judge KELLEY.

I concur in the result reached by the majority which affirms the order of the Montgomery County Court of Common Pleas. However, I believe that the Institutions of Purely Public Charity Act [1] is an unconstitutional exercise by the General Assembly, to the extent that it purports to statutorily define what entities may be deemed to be "institutions of purely public charity" under the provisions of Article 8, Section 2(a)(v) of the Pennsylvania Constitution.[2]

As this Court has previously noted:

[T]he question of whether an entity seeking or defending a tax exemption is a "purely public charity", within the meaning of Article 8, Section 2(a)(v) of the Pennsylvania Constitution, is a preliminary question which must be addressed before the question of whether that entity meets the qualifications of a

statutory exemption can be reached. [*G.D.L. Plaza Corporation v. Council Rock School District*, 515 Pa. 54, 526 A.2d 1173 (1987) ]; [*Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) ]; *School District of the City of Erie v. Hamot Medical Center*, [144 Pa.Cmwlth. 668, 602 A.2d 407 (Pa.Cmwlth.1992) ]. As the Pennsylvania Supreme Court has stated:

In [*Hospital Utilization Project*], which involved a different statutory exemption than that presented here, we did not decide whether the organization met the statutory qualifications for the exemption because it failed to meet the constitutional requirements. As a result the legislature lacked authority to grant an exemption which would have extended to the organization and a statute which purported to do so would have been invalid. *Id.* at 12–13, 487 A.2d at 1311–12. The standards set out in *Hospital Utilization Project* reflect the minimum constitutional qualifications for being an appropriate subject of tax exemption. They do not, of themselves, establish eligibility for exemption.

*G.D.L. Plaza Corporation*, 515 Pa. at 59, n. 2, 526 A.2d at 1175, n. 2.[11] *See also Donohugh's Appeal*, [86 Pa. at 309–10] ("[I]t is conceded that the legislature cannot go outside the class of cases in which the constitution permits exemption from taxation, but it is to be remembered that the provision of the constitution is not a grant of power to the

---

However, there is no evidence in the record indicating that the only single-sex private schools in Pennsylvania are all-male institutions.

**1.** Act of November 26, 1997, P.L. 508, *as amended,* 10 P.S. §§ 371—385.

**2.** Article 8, Section 2(a)(v) of the Pennsylvania Constitution states:

(a) The General Assembly may by law exempt from taxation:

\* \* \*

(v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution. PA. CONST. art. VIII, § 2(a)(v).

legislature, which belongs elsewhere, and is therefore to be strictly construed as in derogation of the people's right. On the contrary, it is a restriction upon a legislative power which would otherwise be unlimited and unquestionable. It is a tying up of the legislative hand . . .").

\* \* \*

[11] In this regard, it is also important to note the provisions of Article 8, Section 5 of the Pennsylvania Constitution which states that, "[a]ll laws exempting property from taxation, other than the property above enumerated shall be void." PA. CONST. art. VIII, § 5. It has long been recognized that this provision absolutely prohibits the General Assembly from providing a statutory exemption beyond those enumerated in Article 8, Section 2 of our Constitution. *See, e.g., Board of Christian Education of Presbyterian Church in United States v. School District of City of Philadelphia,* [171 Pa.Super. 610,] 91 A.2d 372, 374 (Pa.Super.1952) ("[T]he two sections, read together, impose limitations upon the power of the legislature to exempt property from taxation. It is beyond legislative competence to exempt more than the property used as a place of public worship or for purely charitable activities. Moreover, an exemption exists, not by virtue of the provisions of the Constitution, but only by the force of a valid statute enacted under it."). As a result, qualifying for an exemption as a "purely public charity" must be first measured by the constitutional language, and not the statutory language. *See Hospital Utilization Project,* 507 Pa. at 13, 487 A.2d at 1312 ("Hence, we begin our analysis by recognizing that regardless whether HUP qualifies as a 'charitable organization' under [the statutory exemption], as defined by the Pennsylvania Code . . ., it must first qualify under the Constitution as a 'purely public charity'. . . Because we reach the conclusion in our following discussion that HUP is not a 'purely public charity' within the meaning of the Constitution, we do not reach whether HUP qualifies under the Pennsylvania Code definition."). . . .

*Community Options, Inc. v. Board of Property Assessment, Appeals and Review,* 764 A.2d 645, 652–653 (Pa.Cmwlth. 2000). *See also In re Ogontz School,* 361 Pa. 284, 313, 65 A.2d 150, 163 (1949) ("[A]ny act which would attempt to exempt from taxation any institution other than one of purely public charity would be unconstitutional. Justice Dean said, in *White v. Smith,* [189 Pa. 222, 227, 42 A. 125, 126 (1899) ]: 'One thing is clear at the start, no matter what was the legislative language, the exemptions could not extend to any property not a "purely public charity." ' ") (footnote omitted).

The authority to exempt from taxation the parcel of real property involved in this case derives from the provisions of Article 8 of the Pennsylvania Constitution. Article V, Section 2(a) of this organic law also vests in the Pennsylvania Supreme Court "[t]he supreme judicial power of the Commonwealth. . . ." PA. CONST. art. V, § 2(a). Thus, the authority to determine the parameters of what entities constitute "institutions of purely public charity" under Article 8, Section (2)(v), which may then be the proper object of an exemption pursuant to the provisions of a duly enacted statute, ultimately resides in the Pennsylvania Supreme Court which sits as the ultimate interpreter of the Pennsylvania Constitution. *G.D.L. Plaza Corporation; Hospital Utilization Project; Community Options, Inc. See also, City of Boerne v. P.F. Flores,* 521 U.S. 507, 519–520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) ("[C]on-

gress' power under § 5 [of the Fourteenth Amendment to the United States Constitution], however, extends only to 'enforc[ing]' the provisions of the Fourteenth Amendment. The Court has described this power as 'remedial', *South Carolina v. Katzenbach*, [383 U.S. 301, 326, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966)]. The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. Legislation which alters the meaning of the Free Exercise Clause [of the First Amendment] cannot be said to be enforcing the Clause. Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce', not the power to determine what constitutes a constitutional violation. Were it not so, what Congress would be enforcing would no longer be, in any meaningful sense, the 'provisions of [the Fourteenth Amendment].' While the line between measures that remedy or prevent unconstitutional actions and measures that make substantive change in the governing law is not easy to discern, and Congress must have wide latitude in determining where it lies, the distinction exists and must be observed. . . .").

Like the majority, I believe that the Hill School meets the constitutional definition of "institutions of purely public charity" as interpreted by the Pennsylvania Supreme Court. *See* Majority Op. at pp. 315–318. Likewise, I would conclude that the Hill School is a proper object of an exemption from taxation as provided in either the General County Assessment Law[3] or the Institutions of Purely Public Charity Act. *See* Majority Op. at pp. 314–315, pp. 319–320. Accordingly, the order of the Court of Common Pleas of Montgomery County should be affirmed.

Judge PELLEGRINI joins in this Concurring Opinion.

---

**3.** Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–1—5020–602.