ZULICK, /.,
The petition for review of a decision of the Monroe County Board of Assessment Appeals (Board) filed by Petitioner Pocono Community Theater (PCT) on April 2, 2014 is presently before the court. The board denied PCT’s application for exemption from payment of real estate taxes pursuant to 72 P.S. §5453.202. A status conference was held with counsel on May 22, 2014, and a discovery schedule was established. A hearing on the merits was held on September 30, 2014. Both parties appeared for the hearing and PCT presented testimony. A transcript of the notes of testimony was prepared and filed.
FINDINGS OF FACT
1. The property which is the subject of this appeal is a movie theater located at 88 South Courtland Street, East Stroudsburg, Pennsylvania. Petitioner’s Exhibit 2. PCT screens studio, independent and/or art house films nearly every day, and also hosts and supports a variety of community events. NT 17, Petitioner’s Exhibit 12.
2. The bylaws of PCT state “the purposes for which this non-profit corporation is organized is to provide independent and art films offering a unique cinematic experience that enlivens the human spirit and promotes learning; while promoting local visual artists on the stage and in exhibition.” Petitioner’s Exhibit 13.
3. PCT obtained title to the property on October 31, 2012. Petitioner’s Exhibit 5.
4. PCT has one full-time employee, Courtney Tolino, who is the theater’s general manager. NT 77.
*339 5.PCT is managed by an unpaid board of directors. NT 79.
6. PCT’s application for exemption of real estate taxes states:
“(f)or 13 years prior, the theater was a for profit theater that established the market. Since 2008, PCT has been a non-profit that promotes the arts through independent art house and foreign films, live performances, and displaying local artists’ work in the gallery. PCT also has educational outreach programs. The proceeds from the theater cover expenses. Additional funds are used for education and cultural programming to benefit the community. PCT operates through limited part-time staff, one full-time staff member, and volunteer support, including the PCT board of directors.” Petitioner’s Exhibit 2.
7. PCT hosts and supports a number of community programs and events, donating marketing, theater space, and occasional educational programs. See Petitioner’s Exhibit 12; NT at 9. Their ongoing events include artist receptions, lectures and programs for members, community organizations and students. Petitioner’s Exhibit 12.
8. In fiscal year ending June 30, 2010, PCT’s total revenue was $481,110 (fundraising and contributions: $119,807; ticket sales: $309,573; memberships: $51,730). Total expenses were $431,905 and net revenue was $49,205. Total assets were $83,093, total liabilities were $37,193, and net assets were $45,900. Petitioner’s Exhibit 8.
*340 9. In fiscal year ending June 30, 2011 total revenue was $472,065 (fundraising and contributions: $22,708; ticket sales: $395,080; memberships: $47,087; artists’ fees: $616; other: $6,566; investment income: $8). Total expenses were $500,072 and net revenue was ($28,007). Total assets were $48,801, total liabilities were $30,908, and net assets were $17,893. Petitioner’s Exhibit 8.
10. In fiscal year ending June 30,2012 total revenue was $565,740 (fundraising and contributions: $167,601; ticket sales: $268,487; memberships: $45,602; artists’ fees: $75; café: $80,828; theater rental: $3,137; investment income: $10.). Total expenses were $488,107 and net revenue was $77,633. Total assets were $135,215, total liabilities were $39,685, and net assets were $95,530. Petitioner’s Exhibit 9.
11. In fiscal year ending 2013, total revenue was $576,129 (fundraising and contributions: $263,989; ticket sales: $200,409; memberships: $43,140; artists’ fees: $237; other: $68,322; investment income: $32). Total expenses were $474,933 and net revenue was $101,196. Total assets were $637,158, total liabilities were $443,603, and net assets were $193,555. Petitioner’s Exhibit 10.
12. Courtney Tolino, PCT manager, testified that PCT makes donations to non-profits and in kind donations. NT 83. PCT made no in kind contributions in fiscal year ending June 30, 2010; in fiscal year ending 2011, 1.4% of expenses were in-kind donations. In fiscal year ending 2012, 2% of expenses were in-kind donations. In fiscal year ending 2013, 1.8% of expenses were in-kind donations. See Petitioner’s Exhibits, 8-10,12. In the 2013- *341 14 fiscal year, PCT donated $2,455 to other non-profits and made $28,030 in-kind donations. Petitioner’s Exhibit 15. Ms. Tolino calculated that PCT volunteers contributed $140,000 worth of their time to PCT in the 2013/2014 fiscal year. Petitioner’s Exhibit 15.
13. PCT used grant funds to teach children from the YMCA writing skills. NT 13-14.
14. Mr. Scheetz testified that “ticket sales do not operate the theater. It’s the members that keep the theater open for various reasons, and the membership has grown and their interests because of all the programs we’re doing, including the performance on the stage, the plays, the book readings and so forth that we do. That’s what really attracts more and more members.” NT 26-27.
15. PCT is able to screen educational films that East Stroudsburg University is unable to legally screen due to copyright and licensing issues. NT 41.
16. PCT occasionally admits patrons who cannot afford the admission price, but it has no written policy addressing free or discounted admission, and no records of such admissions are kept. PCT’s studio contracts require PCT to pay the studios a percentage of the admission price for each person watching a film, so PCT must pay for patrons admitted free of charge. The PCT newsletter directs patrons to call Mr. Scheetz if they do not have means to pay, and decisions on discounts are made on an ad hoc basis. NT 49-50. PCT employees on occasion serve food in the café to people who cannot afford it. Id. Again, no written policy exists and no records are kept
*342 17. Deborah Boyle, a certified public accountant who has prepared PCT’s tax returns, stated at trial concerning PCT’s net operating income, “honestly, it looks really swell, but it’s not — it’s paper. It’s numbers. It’s not cash...They are not operating on a cash basis.” Id. at 72. She further stated that PCT is operating at break even, including contributed monies. Id. at 73.
18. PCT is registered as a charitable organization with the Department of State’s Bureau of Charitable Organizations under the solicitation of funds for charitable purposes act, 10 P.S. §162.1 et seq. Petitioner’s Exhibit 6.
19. PCT is exempt from federal income tax as a public charity, pursuant to 26 U.S.C. §501(c)(3). Petitioner’s Exhibits 8, 9, 10.
20. PCT regularly presents community events. Most of these events are providing entertainment to members and the public or programs for non-profit groups. Many times the non-profit groups use the screening of a film for fundraising purposes. Petitioner’s Exhibit 12.
DISCUSSION
PCT seeks tax exempt status in this assessment appeal.[1] The board ruled on April 2, 2014 that PCT did not qualify as a “purely public charity” and thus was not entitled to exemption from real estate taxes pursuant to 53 Pa.C.S. §8812(3). At the hearing held on September 30, 2014, *343 Skip Scheetz, the president of PCT’s board of directors; Deborah Boyle, a certified public accountant; and Courtney Tolino, PCT’s only full-time employee, testified on behalf of PCT, and PCT introduced various records, letters, and tax returns. Petitioner’s Exhibits 1-17. The Board produced no evidence, but argued that PCT did not qualify as a charity under the Pennsylvania Constitution.
An institution seeking a real estate tax exemption bears a heavy burden of establishing its entitlement to such an exemption. Church of the Overcomer v. Delaware County Board of Assessment Appeals, 18 A.3d 386, 391 (Pa. Cmwlth.2011). A property owner’s entitlement to a tax exemption is a mixed question of law and fact. Id. at 388-89 n. 1.
For real estate tax exemption as a purely public charity, the petitioner must first meet the five-part test detailed in Hospital Utilization Project v. Com., 487 A.2d 1306 (Pa. 1985)(hereinafter HUP) in order to qualify under the Pennsylvania Constitution. An entity must possess all of the following characteristics:
(a) Advances a charitable purpose;
(b) Donates or renders gratuitously a substantial portion of its services;
(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;
(d) Relieves the government of some of its burden; and
(e) Operates entirely free from private profit motive.
*344 Hospital Utilization Project, 487 A.2d at 1317.
If an entity meets the HUP test and qualifies as a purely public charity under the Pennsylvania Constitution, then it must also meet the statutory definition enumerated in the institutions of purely public charity act. 10P.S. §375 (Act 55). The “prior jurisprudence [In HUP] sets the constitutional minimum for exemption from taxes; the legislation may codify what is intended to be exempted, but it cannot lessen the constitutional minimums by broadening the definition of ‘purely public charity’ in the statute.” Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals, 44 A.3d 3, 5 (Pa. 2012).
The public charity act includes standards similar to the HUP test, including requiring the entity to meet the criteria of advancing a charitable purpose, operating entirely free from private profit motive, donating a substantial portion of its services, benefiting a substantial and indefinite class of persons who are legitimate subjects of charity, and relieving the government of some burden. 10P.S. §375(b)-(f). However, unlike the HUP test, the statute includes specific sub-criteria under each categoiy with which the entity must comply. If the entity fails to meet any one of the criteria, the entity will not be tax exempt as a purely public charity. Guthrie Clinic, Ltd. v. Sullivan Cnty. Bd. of Assessment Appeals, 898 A.2d 1194 (Pa. Cmwlth. 2006). Finally, an entity’s status as a charity or non-profit for federal income tax purposes does not have any effect on the analysis under state law. Hospital Utilization Project, 487 A.2d at 1316.
*345 PCT presents independent, foreign, art house and studio films at its theater, and the theater is open year round. PCT contends here however that it is not a commercial movie theater. Rather, it argues that it is a purely public charity entitled to a tax exemption for real estate taxes under 53 Pa.C.S.A. §8812(3). To begin this discussion, the evidence established that PCT’s main business offering to the community is as a movie theater. As Deborah Boyle candidly testified:
Q: (Mr. Dumey) Would the theater be able to continue to operating without showing movies?
A: (Ms. Boyle) Well, I mean — you know, let’s get basic here. It’s a theater. I mean, that’s what it does. It runs movies. It wouldn’t be that if it didn’t run movies. Do you see what I’m saying?
I mean to say it runs without the movies, no, but you know, I think if you are asking the question, could they actually get grants and stuff, take away the movies, get grants to do what they are doing and just be a theater? Probably not. I mean, I think, you know, to some extent, the way they are able to do for the community what they do is because they make a buck with the memberships and at the box office. NT 75-76.
However, PCT also uses its facilities for films and events benefitting area non-profits, governmental and educational institutions. Skip Scheetz, president of PCT’s board, testified that PCT offers its facilities to the Pocono Medical Center for programs to the public on medical subjects, such as depression and diabetes. NT *346 14, 16, 44. PCT used a grant from Best Buy to host a YMCA latchkey program where children were taught how to write screenplays and use clip art. NT 13-14. The Stroudsburg Area Regional Police Department has presented a film on drug abuse and alcoholism NT 9. Classes from the East Stroudsburg and the Stroudsburg Area School Districts and East Stroudsburg University have presented film programs. NT 10. PCT hosts the Gay Straight Alliance group from Stroudsburg High School once per month, NT 10 and PCT provides a movie at no cost to the students.
Petitioner’s Exhibit 12 described community events that have been held at the PCT since 2010. Many of these events involved the screening of films by community organizations. In 2010, there were 19 events held. These included lectures, documentary screenings and panel discussions, an evening with Bob Dorough, book readings, film festivals, Pocono Animal Rescue’s fundraising benefit, and poetry readings. One event involved an educational purpose, the Silence Not, A Love Story production by the ESU Theater Department. Petitioner’s Exhibit 12.
In 2011, there were 16 community events held. These included film premieres and festivals, poetry slam fests, lectures, documentaries and local films. Three of these events involved an educational purpose. One was the East Stroudsburg South’s Performance Club presenting a program on teen identity; another was a fundraiser for East Stroudsburg South students and an anti-bullying seminar presented by the Department of Education. Id.
In 2012, there were nine community events. These *347 included film premieres, a benefit show for the American Cancer Society, film festivals, a benefit for the Stroudsburg Little League, an AA documentary, and a fundraiser for the International Brotherhood of Magicians. One of these events involved an educational purpose, a film and panel discussion on bullying open to students and teachers.
In 2013, there were 27 community events. These included film premieres, documentaries, film festivals, live performances, poetry slamfests and an AA documentary. Of these seven were educational or charitable in nature. They included a two days of YMCA film camp, a concert benefitting the East Stroudsburg Methodist Church, a Northampton County Community College screening of “The Great Gatsby,” the same screening for East Stroudsburg High School students, a Lyme disease symposium, and a Pocono Medical Center screening of “Silver Linings Playbook” as part of its Depression Awareness week. Id.
In 2014, there were 28 community events. These included music festival events, documentaries, film festivals, a League of Women Voters discussion following a film on fracking, a Patti Lupone concert, a script reading, a book signing, live performances, and book readings. Of these, five were educational or charitable in nature. These included two films sponsored by the ESU English and Writing Studio, “Robin and Marian”, and “The Hunchback of Notre Dame”; a documentary, “Why We Ride” benefitting the animal league, a screening of an Asian film by an ESU history class, a performance by local high school students of numbers from “Carousel”, *348 a screening of a documentary “Coming Clean” hosted by the Stroud Area Regional Police Department. Id.
As can be seen from the review of PCT’s community event offerings over the past four years, most of them involve entertainment events that have a laudable purpose for the community, but are not in and of themselves charitable or educational events.
Amongst these offerings, PCT does meet the first prong of the HUP test. It is advancing a charitable purpose, although that is clearly secondary to its business as a movie theater. Besides its movie business, PCT presents primarily the entertainment offerings of community groups who use the facility for presentations or fundraising. Because some of these offerings benefit area non-profit groups and high school and college classes, it is assisting groups which are the subject of charity.
PCT also meets the second prong of the HUP test in that its efforts benefit a substantial and indefinite class of persons who are legitimate subjects of charity. The programs offered by PCT at reduced cost to area educational and non-profit institutions.
PCT’s business is entirely free from the profit motive. The testimony in this case described a committed group of volunteers that devotes many unpaid hours to maintaining PCT’s offerings to their community. The income from business operations is not sufficient to keep the doors of the movie theater open, and the board has had to rely on donations from members and grants to keep the theater functioning. If profit were the motive, volunteers, member *349 donations, grants and contributions would be non-existent. PCT meets the fifth prong of the HUP test.
Where PCT has failed to meet its burden of proof is in the fourth element of the HUP, in that it does not relieve the government of some of its burden. PCT relies upon the supreme court’s decision in Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals, 714 A.2d 397 (Pa. 1998) for support. There the supreme court upheld the tax exemption of Longwood Gardens. The court’s holding was later explained by the superior court as follows:
[UJnionville-Chadds Ford concerned Longwood Gardens, a world-renowned public garden, which includes an arboretum, conservatory and greenhouse complex, architectural displays, water gardens, fountains, an open air theater, meadow and forest land, wildlife habitats, walking trails, picnic areas and a variety of educational and research facilities. 552 Pa. at 215, 714 A.2d at 398. Longwood Gardens hosts hundreds of performing arts events a year, conducts workshops and lectures and has donated $2 million dollars to the surrounding community for local road improvement and additional money to schools and the local fire and rescue squads. In Unionville-Chadds Ford, our Supreme Court found that although the government did not have a constitutional or statutory obligation to provide public gardens, this is not determinative as to whether an entity relieves the government of some of its burden. 552 Pa. at 220, 714 A.2d at 401. Our Supreme Court concluded that:
*350 the government has long provided support for public parks and recreation areas as well as for cultural institutions, including museums, libraries, etc. Longwood’s public park and cultural facilities fall clearly within the scope of burdens that are routinely shouldered by government. Hence, this element of the HUP test was properly found to be met.
Camp Hachshara Moshava of New York v. Wayne County Bd. for Assessment and Revision of Taxes, 47 A.3d 1271, 1278 (Pa. Cmwlth. 2012).
As has been stated, the Unionville-Chadds Ford case does support the “charitable purpose” and “relieving the government of a burden” aspects of PCT’s case to the extent that it is providing charity or an educational benefit. However, the HUP decision places the burden on PCT to show that it is donating a substantial portion of its services to its charitable undertakings. The testimony and exhibits clearly showed that the bulk of PCT’s services is screening movies to the public for an admission fee and allowing community groups to present films and programs for entertainment or fundraising purposes.
The board argues that PCT’s activities do not relieve the government of a burden, because there is no obligation on the part of the government to show films or provide film camps. See Camp Hachshara Moshava of New York v. Wayne County Board, 47 A.3d 1271, (Pa. Cmwlth. 2012), appeal denied, 69 A.3d 603 (Pa. 2013). The board is correct as far as PCT’s entertainment offerings are concerned, which is the bulk of its programs. Although PCT has provided educational programs for high school *351 students, ESU students, the Stroud Area Regional Police Department and the Pocono Medical Center, these programs are not a significant portion of PCT’s efforts. Clearly, PCT focuses first on its movie theater business and secondly on the use of films and its theaters for general use by non-profit community groups. Supporting local non-profit groups is an honorable undertaking, but it is not relieving the government of its burden in a significant way. The government has no obligation to present entertainment, and it likewise has no obligation to support non-profit fundraising.
Whether PCT donates a substantial portion of its services to relieving the government’s burden is based upon “the totality of circumstances surrounding the organization: and the word ‘substantial’ does not imply a magical percentage.” HUP at 1316.fn. 9. However, here PCT has failed to meet its burden of proof. There simply are not enough charitable or educational offerings to support a granting of an exemption under the HUP test.
PCT likewise does not qualify for an exemption under the statute. First, in order to be free from private profit motive, the entity must adopt “as part of its articles of incorporation or, if unincorporated other governing legal documents a provision that expressly prohibits the use of any surplus funds for private inurement to any person in the event of a sale or dissolution of the institution of purely public charity.” 10 P.S. §375(c)(4). As PCT did not include its Articles of Incorporation among its exhibits, this is impossible to determine. Second, PCT does not meet section (d) Community service:
*352 (a) Community service. —
(1) The institution must donate or render gratuitously a substantial portion of its services. This criterion is satisfied if the institution benefits the community by actually providing any one of the following:
i. Goods or services to all who seek them without regard to their ability to pay for what they receive if all of the following apply:
1. (A) The institution has a written policy to this effect.
2. (B) The institution has published this policy in a reasonable manner.
3. (C) The institution provides uncompensated goods or services at least equal to 75% of the institution’s net operating income but not less than 3% of the institution’s total operating expenses.
ii. Goods or services for fees that are based upon the recipient’s ability to pay for them if all of the following apply:
1. (A) The institution can demonstrate that it has implemented a written policy and a written schedule of fees based on individual or family income. An institution will meet the requirement of this clause if the institution consistently applies a formula to all individuals requesting consideration of reduced fees which is in part based on individual or family income.
2. (B) At least 20% of the individuals receiving goods or services from the institution pay no fee or a fee which *353 is lower than the cost of the goods or services provided by the institution.
3. (C) At least 10% of the individuals receiving goods or services from the institution receive a reduction in fees of at least 10% of the cost of the goods or services provided to them.
4. (D) No individuals receiving goods or services from the institution pay a fee which is equal to or greater than the cost of the goods or services provided to them, or the goods or services provided to them, or the goods or services provided to the individuals described in clause (B) are comparable in quality and quantity to the goods or services provided to those individuals who pay a fee which is equal to or greater than the cost of the goods or services provided to them.
iii. Wholly gratuitous goods or services to at least 5% of those receiving similar goods or services from the institution.
iv. Financial assistance or uncompensated goods or services to at least 20% of those receiving similar goods or services from the institution if at least 10% of the individuals receiving goods or services from the institution either paid no fees or fees which were 90% or less of the cost of the goods or services provided to them, after consideration of any financial assistance provided to them by the institution.
v. Uncompensated goods or services which in the aggregate are equal to at least 5% of the institution’s *354 costs of providing goods or services.
vi. Goods or services at no fee or reduced fees to government agencies or goods or services to individuals eligible for government programs if any one of the following applies:
1. (A) The institution receives 75% or more of its gross operating revenue from grants or fee-for-service payments by government agencies and if the aggregate amount of fee-for-service payments from government agencies does not exceed 95% of the institution’s costs of providing goods or services to the individuals for whom the fee-for-services payments are made.
2. (B) The institution provides goods or services to individuals with mental retardation, to individuals who need mental health services, to members of an individual’s family or guardian in support of such goods or services or to individuals who are dependent, neglected or delinquent children, as long as the institution performs duties that would otherwise by the responsibility of government and the institution is restricted in its ability to retain revenue over expenses or voluntary contributions by any one of the following statutes or regulations or by contractual limitations with county children and youth offices in this Commonwealth:...
vii. Fundraising on behalf of or grants to an institution of purely public charity, an entity similarly recognized by another state or foreign jurisdiction, a qualifying religious organization or a government agency and *355 actual contribution of a substantial portion of the funds raised or contributions received to an institution of purely public charity, an entity similarly recognized by another state or foreign jurisdiction, a qualifying religious organization or a government agency.
10 P.S. §375(d).
PCT has not donated or rendered gratuitously a substantial portion of its services. It has no written policy pursuant to §375(d)(l)(i) and (ii), and, because its in-kind donations of services amount to between 1% and 2%, it does not meet §375(d)(l)(v).
The board was warranted in refusing to grant tax exemption status to PCT.
ORDER
And now, this 31st day of December, 2014, following a hearing on the merits, it is ordered that the appeal from the decision of the Monroe County Board of Assessment filed by Pocono Community Theater is denied.

. Article 8, section 2(a)(v) of the Pennsylvania Constitution states, “[t]he general assembly may by law exempt from taxation...[institutions of purely public charity, but in the case of any real property tax exemption only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.”